**FAIRVIEW DEACONESS HOSPITAL, et al., Plaintiffs/Appellants,**

**v.**

**Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant/Appellee.**

**No. 84–5014MN.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided Dec. 10, 1984.

Fagg, Circuit Judge, filed concurring statement.

Patric Hooper, Los Angeles, Cal., for plaintiffs/appellants.

Laurence Gilbert, Chicago, Ill., for defendant/appellee.

Before ARNOLD and FAGG, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

This case presents an interesting question of accommodating two statutory provisions which point in opposite directions. The issue involved is whether Medicare is obliged to pay for telephones in patients' rooms in hospitals. Appellants (six hospitals) point to 42 U.S.C. § 1395x(b)(2), which authorizes payment for "such use of hospital facilities, and such medical social services as are ordinarily furnished by the hospital for the care and treatment of inpatients, and such ... appliances and equipment, for use in the hospital, as are ordinarily furnished by such hospital for the care and treatment of inpatients." The Secretary, on the other hand, points to 42 U.S.C. § 1395y(a)(6), which prohibits payment for "any expenses incurred for items or services ... which constitute personal comfort items."

The mechanism provided by the statute for payment of the reasonable cost incurred by hospitals (described as "providers" of health services) through a private sector "fiscal intermediary" (such as Blue Cross) permits such fiscal intermediary to audit providers' reports and make payments [42 U.S.C. § 1395h], subject to review by a Provider Reimbursement Review Board established by the Secretary under 42 U.S.C. § 1395oo. Under 42 U.S.C. § 1395oo (f)(1) a provider is entitled to judicial review of the Board's decisions (or those of the Secretary thereon) and also to obtain judicial review of "any action of the fiscal intermediary which involves a question of law or regulations relevant to the matter in controversy" if the Board determines that it is without authority to decide the question (or fails to make a timely determination with respect to its authority).[1] However, 42 U.S.C. § 1395oo (g)(1) provides that "The finding of a fiscal intermediary that no payment may be made under this subchapter for any expenses incurred for items or services furnished to an individual because such items or services are listed in section 1395y of this title shall not be reviewed by the Board, or by any court pursuant to an action brought under subsection (f) of this section."

■ The Secretary first contends that the District Court (and hence this Court) have no jurisdiction of the case at bar by virtue of the above-quoted exclusionary language of 42 U.S.C. § 1395oo (g)(1). We reject this contention.

In the first place, so to hold would be to beg the question as to the merits of appellants' position. The jurisdictional bar speaks only of "items or services *furnished to individuals*." [Italics supplied]. The issue presented by appellants on the merits is whether functioning telephones in patients' hospital rooms constitute a service *furnished to individual patients* for their *personal comfort* or are "facilities" or "appliances and equipment" which are "ordinarily furnished by such hospital" as part of the normal and customary overhead operating expenses of the hospital such as windows that keep out rain, curtains and drapes that keep out excessive light, mattresses for the beds, tables for serving

---

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. In the case at bar the Board made a timely determination that it had no power to deal with the case. It relied upon the exclusionary bar of all review contained in § 1395oo(g)(1) rather than making an "authority determination" under § 1395oo (f)(1). J.A. 24–26. The Board operates under a regulation by the Secretary [42 CFR 405.1867] providing that "the Board must comply with ... regulations" issued by the Secretary under title 18 of the Act. J.A. 15–18. 42 CFR 405.1873(b) excludes from review by the Board determinations made by a fiscal intermediary under 42 U.S.C. § 1395y. On October 20, 1966, the Secretary issued 42 CFR § 405.301(j) prohibiting payment for personal comfort items and services (for example a television set, or telephone service, etc.). This is the regulation the validity of which is attacked by appellants in the case at bar.

meals, chairs for the patient or visitors to sit upon, lights for use when reading, cabinets for storing the patient's street clothes, bedside tables for glasses or drinking water, and the like. In the absence of any proof that these customary items are not allowable in calculating reimbursement to providers, the question raised by appellants on the merits is whether telephones should be treated like such customary items, or as personal comfort items such as a heating pad or cashmere shawl not needed as therapeutic treatment but merely for the personal comfort of the patient.

In the second place, the wording of 42 U.S.C. § 1395oo (f)(1) grants judicial review of matters involving "a question of law or regulations relevant to the matter in controversy" when the Provider Reimbursement Review Board cannot afford relief. Appellants in the case at bar attack the validity of a relevant regulation, not the amount of reimbursement claimed.[2] They raise a question of law. What we are called upon to review in the case at bar is "a question of law or regulations" relevant to the matter in controversy, and our review addresses the validity of a regulation. We are not reviewing the propriety of a payment made (or not made) pursuant to the terms of the regulation. We are not dealing with "issues of cost reasonableness and the amount of reimbursement due a provider for admittedly covered services." *Highland Dist. Hospital v. Secretary,* 676 F.2d 230, 236 (6th Cir.1982).

As well summarized by the District Court, "Section 1395oo (g) precludes judicial inquiry into mere ministerial determinations resolving payment disputes. It does not insulate policy decisions of the Secretary from judicial scrutiny." A contrary conclusion would give the Secretary "unbridled discretion to prevent reimbursement through regulations." *Memorial Hospital v. Heckler,* 706 F.2d 1130, 1133 (11th Cir.1983). Similarly, in *St. James Hospital v. Schweiker,* 698 F.2d 1337, 1345–46 (7th Cir.1983), it was held that a court may review "the Secretary's interpretation of what a personal comfort item consists of." We agree with the reasoning of the Seventh and Eleventh Circuits,[3] which is in accord with the general presumption in favor of judicial review, where there is no clear and convincing evidence of a contrary legislative intent. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975).

Turning then to the merits, we note that appellants present both procedural and substantive objections to the challenged regulation. They contend that no hearing was held or record developed showing the desirability of the regulation; and that the Secretary did not consider all relevant factors in arriving at the determination made. Substantively, they argue that telephones should be deemed to fall within the category of customary equipment ordinarily supplied in hospitals; and, secondly, that "personal comfort" should be interpreted as referring to physical comfort, in a health-related sense, rather than to mere convenience unconnected with physiological conditions. Their interpretation would view "comfort" as the opposite of "discomfort," the medical euphemism for the lawyer's expression "pain and suffering." A personal comfort item, they infer, would include *"health-like* or *Medical-related* items, such as massages or heat lamp treatments, which patient telephones *are not."* [Appellants' Brief, p. 8, italics in

---

2. This distinction resembles that between eligibility for benefits and the amount to be awarded, which was recognized in *U.S. v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982) [judicial review under part B of Act limited to eligibility].

3. Our conclusions, both as to jurisdiction and merits, are corroborated also by the decision of the Fourth Circuit in *Arlington Hospital v. Heck-* *ler,* 731 F.2d 171 (4th Cir.1984), which has been subsequently brought to our attention. The Fifth Circuit, in *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381, 1384 (5th Cir.1981), also sustained the telephone regulation, though the attack in that case was based upon First Amendment grounds not asserted in the case at bar.

original.] They contend that the legislative history supports this interpretation.[4]

Nevertheless, upon careful consideration, we conclude that the District Court's decision should be affirmed. The point at issue here is of a kind that should be determined administratively, in accordance with the established doctrine of "primary jurisdiction" to be exercised by the agency involved in administering the statute, rather than *ab initio* by a court; and the Secretary's regulation applying the statute is a reasonable interpretation, not inconsistent with the Act or repugnant to its language, and not arbitrary or capricious, in excess of statutory authority, contrary to law, or otherwise invalid.

Examining first the procedural points, we note that there is no record available showing the reasons which led to the October 20, 1966 regulation. At that time, however, the Administrative Procedure Act (enacted in 1946 after lengthy exertions by the American Bar Association) contained an exemption covering matters "relating to agency management or personnel or to public property, loans, grants *benefits*, or contracts." [Act of June 11, 1946, sec. 4, 60 Stat. 237, 238; 5 U.S.C. § 553(a)(2), italics supplied]. It appears that in 1971 the Secretary waived the exemption with respect to rulemaking under the Medicare Act,[5] but in 1966 when the regulation here involved was promulgated the APA requirements were by their own terms inapplicable. Since the Secretary was not then required to hold a hearing at all or seek comments on the proposed regulation, it is idle and fruitless speculation to try to determine what factors he considered or whether he gave appropriate consideration to all relevant factors.[6]

Coming then to the merits of appellants' argument, we are constrained to conclude that the Secretary's regulation here involved falls within the statutory authority conferred by 42 U.S.C. § 1395hh which provides that

The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter.

Neither of the two statutory passages involved in the case at bar is unambiguously self-defining or self-executing[7] and not in need of supplementation by regulation. As stated in the Seventh Circuit case cited previously, it is necessary to consider "the Secretary's interpretation of what a personal comfort item consists of." 698 F.2d at 1346. Quite often, it may be suspected, legislators adopt intentionally vague language and leave to administrative agencies and courts the task of applying it to specific situations.[8] With respect to personal comfort items, the Secretary should have the first chance to apply the language spe-

---

**4.** Appellant's argument from legislative history is a rather weak negative pregnant. Telephones were mentioned by the then HEW Secretary in 1963 as an example of an excluded personal comfort item. The committee reports subsequently substituted *television* as an example. *St. Joseph Hospital v. Heckler*, 570 F.Supp. 434, 444 (N.D.Ind.1983). The legislators need not have disagreed with the Secretary's illustration; they doubtless merely thought that television furnished a better and stronger illustration.

**5.** See *Humana of S.C. v. Califano*, 590 F.2d 1070, 1084 (D.C.Cir.1978).

**6.** This argument of appellants is bottomed on *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

**7.** The situation is somewhat similar to the problem presented in determining whether a particular international treaty is "self-executing" and automatically operative as internal law under Art. VI, cl. 2 of the United States Constitution, or whether it contemplates further domestic legislative action in order to become binding on private parties as domestic law. See Dumbauld, *The Constitution of the United States* (1964) 290.

**8.** See Judge Henry Friendly's comments in 1963 about "judges who can't and legislators who won't." Friendly, *Benchmarks* (1967) 41, at 47–48. Likewise during negotiation of the Louisiana Purchase Treaty Napoleon uttered the memorable quip that if an ambiguity did not already exist in the treaty it would be well to insert one, and Talleyrand told the American minister, Robert R. Livingston, that "you have made a noble bargain for yourselves and I suppose you will make the most of it." Dumbauld, "John Marshall and Treaty Law," 50 Am.J.Int.Law (1956) 69, 77.

**1260**

cifically to particular items by the gradual "process of ... inclusion and exclusion, as the cases presented for decision shall require."[9]

Likewise the other statutory provision invoked by appellants in the case at bar is not self-executing. Judicial interpretation of the statute *a priori* would not be a satisfactory method of determining what "facilities ... appliances and equipment" are "ordinarily furnished" by hospitals. It would be much more appropriate for the Secretary to make regulations with respect to this matter also, after holding a hearing and ascertaining what is ordinarily and customarily furnished by hospitals today. This is a flexible provision, requiring resort to current practice. It is not an immutable and unchangeable rule crystallized in concrete, once and for all time delivered by the lawgiver.[10]

It would be quite desirable for the Secretary to hold a hearing on both of these issues, since they have become the subject of such extensive controversy, but without the existence, at the present time, of a record containing a satisfactory factual basis enabling an intelligent determination to be made, either by the Secretary or a reviewing court. Hopefully, sometime in the future this topic may be made the subject of a hearing where the facts can be accurately ascertained as they exist under present-day conditions, and appropriate regulations promulgated.

■ In the present state of the record, we are constrained to conclude that the Secretary has not acted *ultra vires* in treating the telephones in patients' rooms as an unreimbursable item.

The decision of the District Court is accordingly

AFFIRMED.

FAGG, Circuit Judge, concurring.

The Court concludes that it was within the Secretary's power to treat patient tele-

phones as nonreimbursable items. I concur.

---

9. *Davidson v. New Orleans,* 6 Otto 97, 104, 96 U.S. 97, 104, 24 L.Ed. 616 (1877).

10. Like "the law of the Medes and Persians, which altereth not" (Daniel 6:12), or the provision in the Pennsylvania Bill of Rights (Art. I, sec. 6) that trial by jury "shall be as heretofore."