113 F.3d 1240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
COUNTY OF LOS ANGELES, dba LAC/USC Medical Center, Rancho
Los Amigos Medical Center, High Desert Hospital, Olive
View/UCLA Medical Center, Martin Luther King, Jr./Drew
Medical Center, and Harbor/UCLA Medical Center, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 96-55161.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1997.
Decided May 14, 1997.
 
 1
 Before: RYMER and THOMAS, Circuit Judges; PANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Los Angeles County appeals from the district court's affirmance of a Medicare reimbursement decision issued by the Secretary's Provider Reimbursement Review Board and adopted by the Secretary covering fiscal years beginning in 1985 through 1988. The County argues that the Secretary's application of reasonable compensation equivalent (RCE) limits on physician costs contained in her Medicare regulations was arbitrary and capricious or otherwise contrary to law under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), in that the Secretary failed to publish updates of the RCE limits for those years as required by the regulations. The Secretary maintains that the regulations do not require yearly updates. The district court had jurisdiction under 42 U.S.C. § 1395oo(f)(1), we have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 4
 * It is about as clear as can be that when HHS issued its RCE limit regulations it intended to update the limits every year. The preamble to the final rule says so in so many words, 48 Fed.Reg. 8902, 8923 (1983), and the Secretary does not deny it. The County argues that because we know HHS anticipated that it would provide annual updates, we therefore know that's what the regulations require. The County also submits that the text of the regulations, as well as subsequent HHS pronouncements, support its position. The Secretary responds that nothing in the rule itself mandates updates, and she has never issued an authoritative interpretation discerning such a requirement.
 
 
 5
 We review the district court's application of the APA de novo. Linoz v. Heckler, 800 F.2d 871, 875 (9th Cir.1986). The parties agree that our approach to the Secretary's interpretation of the RCE limit regulations is governed by Thomas Jefferson University v. Shalala, 114 S.Ct. 2381 (1994), in which the Court said:
 
 
 6
 We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " In other words, we must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." ...
 
 
 7
 ....
 
 
 8
 [However,] an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is " 'entitled to considerably less deference' than a consistently held agency view."
 
 
 9
 Id. at 2386-87, 2388 (citations omitted). We therefore must decide, first, whether the Secretary's view is entitled to a lesser degree of deference because it conflicts with a previous interpretation, and if not, whether Los Angeles County's reading of the rule as requiring annual updates is "compelled by" the plain language of the rule or by indicia of the agency's original intent. We answer no to all of these questions.
 
 
 10
 * The County argues that the Secretary's interpretation is not entitled to much deference because prior to its decision in this case, HHS said publicly on four occasions that it was obligated to update the RCE limits annually: in the preamble to the proposed rule, in the preamble to the final rule, in the announcement of the 1984 RCE limits, and in the agency's Provider Reimbursement Manual (PRM). The County also points to non-public internal memoranda of the Health Care Financing Administration (HCFA) which were not before the PRBB and which the district court declined to consider. We do not believe that on any of these occasions the agency stated that it interpreted the regulations to require annual updates.
 
 
 11
 The preambles to the proposed and final rules promise yearly updates, and we have no doubt that HHS intended to do them. However, the preambles do not say that the Secretary interprets the rule as requiring yearly updating. Since we are inclined to defer to the Secretary's reading of ambiguous HHS preambles just as we do her reading of ambiguous HHS regulations, we accept her position that the statement in the 1983 final rule preamble that HHS "will" update the RCE limits annually was only a non-binding statement of intent.
 
 
 12
 The County argues that HHS's statement when it announced the FY 1984 RCE limits that the rule requires limits to be announced "before the start of a [cost reporting] period to which [they] will be applied," 50 Fed.Reg. 7124, 7125 (1985) (quoting 42 C.F.R. § 405.482(f)(1)), means that HHS understood that each update could apply only to one fiscal year. Again, we do not doubt that in 1985 HHS intended to issue updates every year. But nothing in the quoted language precludes HHS from applying the FY 1984 limits to future reporting years, since the limits were being published "before the start" of those years too. The "before the start" restriction seems only to forbid applying new RCE limits in mid-year, and we do not read the FY 1984 update as announcing a different interpretation.
 
 
 13
 The PRM provisions are to the same effect: while the PRM anticipates that the Secretary will update the RCE limits, it does not say that the Secretary is obligated to do so. That the RCE Limit Tables in PRM § 2182.6.F list only FY 1983 and 1984 does not necessarily imply that other, future years are excluded. The PRM falls far short of announcing an "interpretative rule" to apply to this case. Cf. Shalala v. Guernsey Mem. Hosp., 115 S.Ct. 1232 (1995) (upholding application of Medicare accounting standard in PRM as interpretative rule under APA). The County's argument that it "relied" on the PRM is therefore misplaced.
 
 
 14
 The Secretary argues that we should not consider the internal HCFA documents proffered by the County because they were not before the PRRB, citing Capistrano Unified School District v. Wartenberg, 59 F.3d 884, 891 (9th Cir.1995). However, we need not decide that question, because in any event the memoranda reflect only HCFA's intent to prepare an RCE update; they are not official statements that the regulations require HCFA to do so. We do not believe the Secretary ever adopted such an interpretation.
 
 B
 
 15
 The County argues that we should not defer to the Secretary's interpretation because it is simply a litigating position, not an official interpretation of the RCE limit rule. The County argues that the Secretary announced her position for the first time in this case, in that the PRRB's prior statement that the rule does not require annual updates in Good Samaritan Hospital v. Blue Cross & Blue Shield, No. 93-D30 (April 1, 1993), which the Secretary declined to review, was dictum.
 
 
 16
 Even assuming the County is correct that Good Samaritan is not good authority, we do not see how that would make the Secretary's position here a mere litigation stance, since her decision is the product of a separate PRRB ruling in this case, which she has adopted as her own. The Secretary's interpretation of the RCE limit rule in this case is entitled to no less deference because it was developed through adjudication before the PRRB rather than through legislative rulemaking. See Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 400-01 (1988) (noting that PRRB process results in "final decision of ... the Secretary"); Pfaff v. United States Dept. of Housing & Urban Devel., 88 F.3d 739, 747 (9th Cir.1996).
 
 
 17
 While the County is correct that there is a presumption against retroactively applying a rule that is announced in an administrative adjudication when the rule "departs radically" from an earlier agency interpretation, when the public has substantially relied on the earlier agency interpretation, when fines or damages are involved, and when the new interpretation is very broad and general, Pfaff, 88 F.3d at 748, this case is not in that "narrow class," id., as the Secretary's interpretation is not radically different from what she has said before, she is not levying fines or damages, and her determination that the RCE limit rule does not require annual updates is not of broad legal scope.[1]
 
 C
 
 18
 The County argues that the Secretary's interpretation of her RCE limit regulations conflicts with the plain language of the rule. However, as the County's interpretation is not "compelled by" the plain language, Thomas Jefferson University, 114 S.Ct. at 2386, we defer to the Secretary. The County emphasizes that the regulations require HHS to calculate RCE limits "using the best available data," 42 C.F.R. § 405.482(b), and to publish new limits "before the start of a cost reporting period to which [they] will be applied," id. § -(f)(1), and it argues that these provisions require HHS to update the limits every year. But on its face, the rule can be read, as the Secretary reads it, to say only that when she chooses to update the limits, she will use the best available economic data, and that HHS will not enforce against a provider RCE limits that it didn't publish "before the start" of the provider's reporting year. The rule as a whole anticipates annual updates, but it doesn't unambiguously require them.
 
 
 19
 Nor do we believe the provision requiring the Secretary to provide a new opportunity for notice and comment if she changes the "methodology" for calculating the limits, id. § -(f)(2), obligates the Secretary to promulgate a new rule if she decides not to update the limits every year, as the County argues. The "methodology" the rule refers to is HCFA's econometric formula. See 50 Fed.Reg. at 7124-25. That formula hasn't changed.
 
 D
 
 20
 The County argues that its reading of the RCE limit regulations as requiring annual updates is compelled by the evidence of HHS's original intent. However, as we have said, while HHS originally said it would update the RCE limits yearly, we see no indication in the record that the Secretary interpreted the rule as obligating her to do so. The position the Secretary has taken is not a reversal, nor is it "plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ., 114 S.Ct. at 2386. We therefore uphold it. Id.
 
 II
 
 21
 The County argues that the Secretary's decision must be reversed in that the RCE limits do not apply to its fiscal years 1986 through 1989, and its physician costs were not "substantially out of line" with the costs of other providers, citing 42 C.F.R. § 413.9(c)(2). We reject this contention as the Secretary was entitled to apply the RCE limits to the years at issue.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Owen M. Panner, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Secretary's authority to issue retroactive regulations is not at issue here, cf. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988), because this case involves the Secretary's interpretation of existing regulations which took effect before the cost reporting years at issue. Thus, we apply "our general rule of deference to announcements of law by [agency] adjudication." Pfaff, 88 F.3d at 748